## MIDLAND LOAN FINANCE COMPANY v. MERRILL M. MADSEN.[1]

April 28, 1944.

No. 33,622.

*Stinchfield, Mackall, Crounse & Moore,* for appellant.
*Leonard, Street & Deinard,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for damages arising out of defendant's transfer to plaintiff of a usurious conditional sales contract for the sale of a certain Cord automobile by defendant to H. W. Lorentz. The trial court made findings and ordered judgment in favor of plaintiff. Defendant appeals from an order denying his alternative motion for amended findings or a new trial.

During the year 1937, defendant was engaged as a distributor and retail dealer in Cord automobiles in Minneapolis. Plaintiff was engaged in the automobile finance business there. It employed a solicitor who called on automobile dealers, including defendant, to solicit financing of conditional sales contracts. It prepared forms covering such contracts, assignments thereof, and other matters relative thereto, all of which were presented to car dealers, including defendant, for the purpose of facilitating finance transactions. These forms included (1) "Purchaser's Statement," addressed to plaintiff and calling for credit information on prospective purchasers; (2) "Dealer Representations" to plaintiff on the reverse side of the "Purchaser's Statement," with space for the insertion of the cash price, trade-in allowance, unpaid balance, cost of financing, and "total time price"; (3) "Conditional Sale Contract" providing for payments to plaintiff, with two printed forms of "Assignment" running to plaintiff, on the reverse side thereof.

Negotiations between defendant and Lorentz commenced the latter part of July 1937. The Cord involved had a list price of $2,645. Lorentz owned a 1936 Packard on which he desired a trade-in allowance. On July 31, 1937, an order was made out by M. B. Cutter, Jr., defendant's sales manager, which was signed by Lorentz and Cutter. It specified a price of $2,645, a used-car allowance of $1,445, and a balance due upon delivery of $1,200. It contained a provision that it was not binding on the dealer until accepted by him in writing. No such written acceptance thereof was made by the dealer. Plaintiff had no information relative to this order until the trial of this action.

It appeared that Lorentz required financing on the balance of $1,200. Cutter thereupon telephoned plaintiff's office and gave information to the office clerk there that he had sold the car to Mr. Lorentz and that financing was required. Plaintiff's clerk testified that she filled in a "Purchaser's Statement" form on information then given her by Cutter. Therein, in her handwriting, there was set forth:

> "Make of car to be purchased    '37 Beverly Cord
> Selling Price    $2,645.00
> Brokerage    1,420.00 36 Pack.
>
> Balance    $1,225.00 payable
>    in 12 Months."

(The brokerage or trade-in allowance was later increased $25, so that the amount ultimately financed was $1,200.) She testified that by such notations she meant: "The *Madsen Cord Company was selling to Herbert W. Lorentz a 1937 Beverly Cord for $2,645* and that he was trading in a 1936 Packard on which they allowed him $1,420, *which left a balance of $1,225 to be financed over 12 months"*; and that all such information was turned over to the officers of plaintiff. (Italics supplied.)

About the same time, Harold Berlin, solicitor for plaintiff, called upon defendant and assisted in making out another "Purchaser's Statement" form, inserting therein the figures:

> "Cash delivered price    $2,645.00
> Net equity in used car    1,445.00
> Unpaid balance    1,200.00
> Cost of 12 months plan    212.00
> Deferred balance    1,412.00
> Total time price    2,857.00"

Herman Schleiff, president of plaintiff, testified that before the transfer of the conditional sales contract to his company he knew the list price of the Cord was $2,645, the trade-in allowance was $1,445, and the balance to be financed was $1,200; that none of the figures had been misrepresented to him, but that he did not know defendant had contracted to sell the car on other than a time basis for $2,857. Mr. Saxon, treasurer of plaintiff, testified that he did not know Madsen had contracted to sell the car for $2,645, but stated that he had advised defendant that the contract should be increased by $173 to cover finance and insurance charges by his company. (The sum of $39 added thereto made up the $212. The

added sum was to be rebated to defendant if all payments were made when due.)

The transaction between plaintiff and defendant was closed on August 5, 1937. Prior thereto, on plaintiff's insistence, defendant executed a "Repurchase Agreement" in the following form:

"Aug. 5th., 1937.

Midland Loan and Finance Company

\*. \* \* \* \*

Re: Cord sedan
S#2263S M#FB2189.

Gentlemen:

If the first payment of $301.00 is not paid by Mr. H. W. Lorentz on date due, we agree to repurchase said car within fifteen days of first payment date for the sum of $1200.00.

Yours very truly,

MADSEN CORD COMPANY

[Signed] Merrill M. Madsen"

The contract as finally consummated between defendant and Lorentz provided:

"\* \* \* a total time price of $2857.00 payable as follows: $1445.00 on or before delivery [trade-in allowance], leaving a deferred balance of $1412.00 payable at the office of the Midland Loan Finance Co. in 1 installments of $301.00 Sept. 15th. followed by 11 installments of $101.00 on the same day of each successive month commencing Sept. 15th. 1937, and the final installment payable hereunder shall equal the amount of the deferred balance remaining due."

The increase in the sales price and the amount and time of the monthly payments were determined by plaintiff after it had received full details from defendant as to the cash selling price, trade-in allowance, and finance requirements. In consideration of $1,200 then paid to defendant, the conditional sales contract was assigned to plaintiff—defendant then executing the written assignment thereon, which provided:

"ASSIGNMENT WITHOUT RECOURSE

"For value received, the undersigned [defendant] does hereby sell, assign, and transfer to Midland Loan Finance Company, * * * his * * * right, title and interest in and to the within contract and the property covered thereby, * * *.

"The undersigned * * * makes the following representations and warranties: That the said contract is a bona fide one * * * that said property has been delivered into possession of said purchaser; that the amount recited in said contract * * * as part of the purchase price, was actually paid in cash and/or merchandise received * * *; that the amount owing upon said contract is correctly stated therein; that there are no counterclaims * * * on the part of * * * purchaser against the same and should any of these representations or warranties be false or should any claim of breach of warranty be made by the purchaser, * * * the undersigned * * * agrees to pay to you on demand the full unpaid balance of said contract."

Simultaneously with the execution of the contract, defendant prepared and delivered to the purchaser an invoice as follows:

"Salesman   M. B. Cutter Jr.   Date August 5th., 1937.
Sold to H. W. Lorentz, 709 Mtk. Mills Rd., Hopkins, Minn.

| Description | | Unit Price |
| --- | --- | --- |
| Cord Beverly sedan 812 model 1937 | | |
| Serial No. 2263S   Motor No. FB2189 | | 2645.00 |
| Packard 120 Club sedan | 1445.00 | |
| Midland Fin. check | 1200.00 | |
| | | 2645.00 |

Paymts. to be made to the Midland Finance Co. as foll: 1 at 301.00 due Sept. 15th., 1937. and 11 at 101.00 ea."

Plaintiff was unaware that such an invoice had been made or delivered by defendant to Lorentz. Upon payment by plaintiff of the

$1,200 cash by check to defendant and delivery of the contract and assignment to plaintiff, the automobile was delivered to Lorentz.

Subsequently the purchaser defaulted in his payments, and on September 29, 1937, plaintiff wrote defendant as follows:

"We have just found out * * * 1937 Cord Beverly Sedan, * * * purchased * * * by Mr. H. W. Lorentz, was shipped by Mr. Lorentz out of the State. * * *

"According to the repurchase agreement in the above contract we are to notify you within 15 days of first payment due on the above contract. Please advise by return mail as to what proceedings you want us to take in the above matter."

In reply to said letter, on October 9, 1937, defendant wrote plaintiff as follows:

"In answer to your letter of September 29th., * * * we wish to say that the car was supposed to have been returned to us, within 15 days in default of the first payment, for repurchase.

"This has not been done and we have no further liability."

Plaintiff then commenced two actions against the purchaser, one to foreclose the conditional sales contract, and the other in replevin to recover possession of the car as an incident to foreclosure. The purchaser answered in both actions, alleging that the conditional sales contract was usurious and that, in consequence, plaintiff had no right to foreclose the same.

On the evidence presented in the replevin action (which did not include the order of July 31, 1937), the trial court determined that the transaction constituted a usurious loan. In its memorandum therein the court stated that it had "not the slightest hesitation in finding that the transaction as engineered by the plaintiff [Midland Loan Finance Co.] was usurious, and was so intended to be by the plaintiff"; that the dealer was in communication by telephone with plaintiff in regard to the terms of the contract; that all the dealer had coming was $1,200, which was the amount plaintiff actually paid to the dealer by its check in that sum.

On appeal therein (Midland Loan Finance Co. v. Lorentz, 209 Minn. 278, 296 N. W. 911), the trial court's determination was affirmed. This court, however, did not extend its opinion to the question of responsibility for the usurious transaction, holding merely that, since the contract was nonnegotiable, plaintiff took it subject to the defense of usury, whether it had knowledge thereof or not.

In the present action, plaintiff's claim is based upon defendant's alleged breach of express and implied representations and warranties in the written assignment of the conditional sales contract as above set forth, as well as his alleged violation of the Repurchase Agreement. Plaintiff seeks recovery for the amount of the judgment against it in the first actions, and for attorneys' fees and expenses in connection therewith, less credit for the amount realized by it on the sale of the Cord after repossession.

In this action the findings were, in substance, as follows:

That to induce plaintiff to purchase the Lorentz contract defendant expressly represented and warranted to plaintiff that said sum of $1,412 constituted the true balance of the indebtedness from Lorentz to defendant on the contract; that the contract was in all things a bona fide, valid, subsisting, and enforceable instrument; that defendant impliedly warranted that it was valid and not affected with usury.

That plaintiff believed said representations to be true, and, relying thereon and induced thereby, purchased the contract for the sum of $1,200.

That the representations and warranties were false; that the contract was not bona fide or enforceable; that the purported balance of $1,412 was not a valid indebtedness; that the contract was void and usurious in its inception as between defendant and Lorentz; that defendant had agreed to sell the car at $2,645 and had entered into a usurious agreement to forbear the balance of $1,200 in consideration of a promise by Lorentz to pay $1,412 in the manner described in the contract and had thereby exacted usurious interest from him.

That plaintiff did not know or participate in the usury so practiced by defendant, and purchased the contract innocently and in good faith in the usual course of business.

The court also determined that defendant had repudiated the Repurchase Agreement above described upon the "unwarranted ground" that plaintiff had not returned the Cord to defendant.

Based upon such findings, the court ordered judgment against defendant for $4,231.46, computed as follows:

| | |
|---|---:|
| "Paid to defendant for contract * * * | $1,200.00 |
| Paid for insurance | 62.30 |
| Paid to satisfy judgments [against plaintiff] | 2,007.03 |
| Attorneys' fees | 1,500.00 |
| Costs and expenses | 387.13 |
| Total | $5,156.46 |
| Credit * * * [on sale of Cord] automobile | 925.00 |
| | $4,231.46" |

On appeal, defendant asserts (1) that our decision in Midland Loan Finance Co. v. Lorentz, *supra,* finally determined plaintiff's responsibility for the usury and conclusively binds it on that issue; (2) that the evidence does not support the finding that defendant was guilty of misrepresentations or breach of warranty; and (3) that the evidence does not support the finding that defendant violated the Repurchase Agreement.

■ Examination of our opinion in Midland Loan Finance Co. v. Lorentz, *supra,* is persuasive that therein we did not finally determine that plaintiff rather than defendant was responsible for the usury in this transaction. While the trial court there found against plaintiff on this issue, the decision here merely sustained the finding that the contract in itself was usurious, and, being nonnegotiable, that plaintiff in consequence could not recover thereunder. The responsibility for such usury as between plaintiff and defendant here was not passed upon, and there is nothing in the former

decision which thereby renders this issue *res judicata* in the present proceedings.

■ In substance, plaintiff's first claim is that it was unaware of the order for purchase dated July 31, 1937, or that it called for a sale on a cash basis, and that, had it been aware of this fact, it would not have accepted the transaction or purchased the agreement from defendant. It must be noted, however, that this particular sales order did not in any respect constitute the final culmination of the transaction as between the parties. It was never finally accepted by defendant, and appears to have been of little concern to any of the parties. See Dunn v. Midland Loan Finance Corp. 206 Minn. 550, pp. 552 and 555, 289 N. W. 411. Thereafter the negotiations continued and finally culminated in the transaction herein outlined. The order was not presented in evidence in the first action. At best, it was merely a tentative proposal, never finally executed by defendant, but supplemented by other negotiations and documents when it was discovered that the purchaser would be unable to pay cash for the balance due. Under such circumstances, defendant's omission to direct plaintiff's attention thereto prior to the purchase of the contract would appear immaterial in the present proceedings.

■ Plaintiff asserts, however, that the invoice dated August 5, 1937, was likewise not disclosed to it; that this in itself indicated a completed cash sale; and that, had it been aware of the facts therein set forth, it would have avoided the entire transaction. In the first action, the invoice was considered material by the court in determining usury, although the actions and participation of plaintiff and its agents throughout the transaction were deemed of equal importance on this issue. If it be conceded that the invoice of August 5, 1937, was of material importance on this issue, then it is equally clear that plaintiff had by other means been fully advised as to all the information therein contained well prior to the assignment of the contract. The Purchaser's Statement made out by plaintiff's clerk contained substantially the same information. She correctly interpreted it to mean that defendant was

selling a car at a cash price of $2,645 and that the purchaser required financing on a balance of $1,200. This information she conveyed to the officers of the corporation. With this information in mind, plaintiff's solicitor, Mr. Berlin, called upon defendant, participated in the preparation of the agreements relative to the sale, and, on the basis of figures received from plaintiff's office, directed the amount by which the cash price should be increased if financing were to be obtained from plaintiff. The amount of this increase, which rendered the transaction usurious, was for the benefit of plaintiff, which was ultimately to receive the same. Defendant's only interest in the transaction was to obtain the balance of $1,200 due him on the sale, and he followed plaintiff's directions as to the manner in which he might expect to receive this sum from plaintiff. We cannot escape the conclusion that, since plaintiff was fully advised with reference to the details of the transaction, and since it computed and determined the required additions to the sales price which resulted in usury and otherwise directly participated in consummating the agreement by which it expected to benefit to the extent of the added finance charges, it was directly responsible for the resulting invalidity of the conditional sales contract. As stated in Adjustment Service Bureau, Inc. v. Buelow, 196 Minn. 563, 567, 265 N. W. 659, 661:

"* * * Courts look to the substance and effect of transactions. There is no shift or device on the part of the lender to evade the law under or behind which the law will not look to ascertain the real nature and object of the transaction."

As stated in the prior decision involving this action (Midland Loan Finance Co. v. Lorentz, 209 Minn. 287, 296 N. W. 915, *supra*):

"* * * The only contract upon which plaintiff relies for its recovery against defendant is the conditional sale contract. As written and sought to be enforced, it involves a 'loan' of money or 'forbearance' of a debt; the principal sum is payable absolutely and without any contingency; there is the exaction of a greater amount of interest or profit than is allowed by the law; and ob-

viously there was an intention to evade the law since a person 'is presumed to have intended the necessary consequences of his acts.' "

To enable a party relying upon breach of express or implied warranty to recover, it must be clear and definite that there was actual reliance upon the warranties involved. As stated in 5 Dunnell, Dig. § 8557:

"In the absence of express agreement a buyer cannot recover under a general warranty of quality for defects which were actually known by him at the time of the sale, or for defects which were obvious to ordinary observation, if he had a convenient opportunity to inspect the property."

Plaintiff, as indicated, had full knowledge of all the details covered by the representations and warranties referred to, and frankly admitted that defendant at no time misrepresented the transaction or withheld information relative thereto. Under such circumstances, we must hold the evidence does not reasonably sustain the trial court's finding that there was a breach by defendant of the warranties or representations which were either expressed in or might be implied from the written assignment above described, and that accordingly plaintiff has not established its right to recover for damages herein.

The trial court's decision was in part based upon defendant's alleged breach of the Repurchase Agreement. The language of the agreement is plain and unambiguous, and it is clear therefrom that defendant was obligated only to repurchase the car if the initial payment thereon was not made. It cannot be interpreted as binding defendant to repurchase the contract as plaintiff contends. It is manifest that a tender of the car would first be required before defendant became liable thereunder. No such tender accompanied the demand here made, nor was any tender or demand made thereafter. The evidence appears clear that the car was not located until substantially after the 15-day period specified had elapsed. Under such circumstances, we hold that the evidence does not sustain a finding that defendant had violated or breached

the terms and provisions of the Repurchase Agreement. See 5 Dunnell, Dig. & Supp. §§ 8509e and 8649a.

■ The case is readily distinguishable from Dunn v. Midland Loan Finance Corp. 206 Minn. 550, 289 N. W. 411, relied upon by plaintiff. Therein the transactions of the finance company were confined principally to indicating to the dealer the terms upon which it would buy the contract, and, in addition, it furnished the dealer with schedules of discount forms and other instruments to be executed. In the instant case, plaintiff was advised of the cash selling price and the unpaid balance both orally and in writing, and actually, through its agent, increased the balance due to make up the amount which resulted in a usurious transaction. Its active participation in the details of the contract and its full knowledge thereof distinguish it from the case cited.

■ Plaintiff seeks to recover under the indemnifying provisions in the assignment of the conditional sales contract. As indicated, the assignment provides: "should any of these representations or warranties be false or should any claim of breach of warranty be made by the purchaser, then the undersigned [defendant] hereby agrees to pay to you on demand the full unpaid balance of said contract." It is to be noted that the representations and warranties now claimed to be false are those relating to usury and the invalidity of the agreement. Plaintiff, however, was directly responsible for the failure of said warranties. Under such circumstances, it cannot now charge defendant with liability under the clause referred to. Violations of the statutes relative to usury are presumed to be intentional. 6 Dunnell, Dig. & Supp. § 9964. It follows that plaintiff's actions in this respect constituted a conscious and wilful wrongdoing which would not sustain its present claim for indemnity for the loss occasioned by and resulting from its own wrongful acts.

Reversed.

MR. JUSTICE STREISSGUTH took no part in the consideration or decision of this case.