ALLEY CONSTRUCTION CO., INC.,
AND ANOTHER v. STATE.

219 N. W. 2d 922.

July 5, 1974—No. 44298.

---

*Warren Spannaus,* Attorney General, *Eric B. Schultz,* Deputy Attorney General, and *John R. Murphy,* Special Assistant Attorney General, for appellant.

*Briggs & Morgan, B. C. Hart, J. L. Devney,* and *T. S. Figus,* for respondent.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court.

TODD, JUSTICE.

The state appeals from the judgment entered for plaintiff, Alley Construction Co., Inc., and from the order denying its motion for a new trial in an action arising out of the construction of a highway. The state challenges the sufficiency of the evidence permitting recovery on a breach of warranty theory and the allowance of prejudgment interest. We affirm as to the issue of liability and reverse as to the allowance of prejudgment interest.

This litigation concerns the award of a construction contract for 9.3 miles of highway between Kellogg and Wabasha in southeastern Minnesota. The trial was lengthy and complex, but the issues on appeal are quite narrow. Our discussion of facts will

be limited to those pertinent to the disposition of the issues before us.

In 1965, the state commenced the planning and design of the project. On March 7, 1969, bids were requested by advertisement to be returned by March 28, 1969. Plaintiff was the low bidder and was awarded the contract. The plans prepared by the state upon which plaintiff bid consisted of 322 sheets and specifications including hundreds of pages of additional material. Section 1401 of the Standard Specifications for Highway Construction states in part:

"The intent of the Contract is to provide for construction and completion of the Project in every detail as described in the Plans and Specifications."

The 9.3 miles of highway were divided into balance areas. These geographical areas of varying lengths were intended to provide within each an approximate balance between cuts and fills to minimize the hauling of earth materials. Under the terms of the contract, the state was allowed a deviation of 20 percent from any quantity estimates in the plans and specifications. As construction proceeded and was completed, both parties agree that none of the balance areas were actually in balance. At trial, the state contended that the percentage of common excavation overrun was 20.8 percent and the rock overrun was 23.7 percent. The state further contended that this arose because a large part of the rock formation was found to be unstable and under the terms of the contract could be redesigned. The state contended that the contractor was paid for these overruns under a specific clause in the agreement designed for this eventuality and pointed out that there was a substantial payment over and above the contract price.

The contractor submitted evidence that not one of the balance areas on the job actually was in balance. Thus, it was necessary to haul materials out of balance throughout the entire length of the project. In support of its contention, plaintiff submitted an

exhibit detailing the various balance areas which disclosed overruns in some balance areas as high as 744 percent. Since plaintiff is the prevailing party, we are compelled to view the evidence in the light most favorable to its position. Stapleman v. St. Joseph the Worker, 295 Minn. 406, 205 N. W. 2d 677 (1973). We find there was adequate evidence for which the jury could accept plaintiff's position on this matter.

1. The case was submitted to the jury upon the theories of breach of warranty and breach of contract. On appeal, the state contends that it was improper to submit the issue of breach of warranty since there is no evidence that plaintiff relied upon the contract and specifications in submitting its bid. In support, the state submits that plaintiff failed to call as a witness Mr. Lloyd Parker, a former employee who participated substantially in the preparation of plaintiff's bid. The state suggests that it was necessary that Mr. Parker appear and testify that he relied upon the plans and specifications and be subject to cross-examination. It is uncontested that Mr. Parker was available as a witness to either party and that he was not subpoenaed or called by the state.

We are unimpressed by this contention. As indicated previously, the plans and specifications for this project were massive. Plaintiff had 3 weeks in which to make its computations and submit its bids. To require such self-serving testimony of plaintiff's employee seems unnecessary. Further, the specifications required that the contractor bid solely on the plans and specifications. We hold that under the facts and circumstances of this case an inference of reliance properly arises.

We concur in the statement of the trial court made in its memorandum accompanying its order denying a new trial:

"In the proposal here the State furnished certain quantity data, haul station data, and balance area information to prospective bidders. While some of this information was estimated, certainly those estimates must be reasonably accurate in order to provide the contractors some basis for their bidding. Since this is so, the very fact of bidding raises an inference that the con-

tractor relied on the information contained in the plans, specifications, and proposal since the time was too short to do otherwise. Any other conclusion would obviate any necessity for supplying information of any kind at the time of inviting bids. Thus, no direct evidence is in any way necessary to establish the reliance of the ultimately successful bidder on the contract."

The trial court cited Raymond International of Delaware, Inc. 70-1 CCH, Bd. Cont. App. Dec. par. 8341 (1970), in support of its statement that there exists an implied warranty that plans, specifications, and drawings are adequate for the work. Plaintiff also cites McCree & Company v. State, 253 Minn. 295, 91 N. W. 2d 713 (1958), and United States v. Spearin, 248 U. S. 132, 39 S. Ct. 59, 63 L. ed. 166 (1918). While the issue of inference of reliance was not directly involved in these cases, they do support our holding that such an inference properly arises under the facts and circumstances of this case. We find the state's attempt to distinguish these cases on factual bases to be unconvincing.

In McCree & Company v. State, *supra,* our court had occasion to comment on this issue, and we quote with approval the following language (253 Minn. 313, 91 N. W. 2d 725):

"The evidence in the case at bar, viewed as a whole, demonstrates that the owner's actions in furnishing detailed plans and specifications controlled not only the particular result to be accomplished but also the particular construction methods to be followed and used and supports an implied warranty in keeping with the intention and expectation of the parties that the plans, specifications, and soil conditions were such as would permit successful conclusion of the work. The state was the party in control who dictated the entire contract and retained control from start to finish. The evidence reasonably indicates that the plaintiff had neither the time nor the information prior to becoming a bidder nor the right of control in planning or executing the work which under the contract and the plans and specifications rested with the state. We think it may reasonably be said that in the in-

stant case the party who had the superior knowledge and the complete control was the state."

We hold that the issue of breach of warranty was properly submitted to the jury, that the court's instruction on that issue properly covered the evidence to be considered and was in accordance with the applicable law,[1] and that the jury's verdict was reasonably supported by the evidence. Krengel v. Midwest Automatic Photo, Inc. 295 Minn. 200, 203 N. W. 2d 841 (1973).

---

[1] With reference to the issue of breach of warranty, the trial court instructed the jury as follows: "In order to recover for breach of warranty, the Plaintiff has the burden of proving by a fair preponderance of the evidence the following elements:

"Number One. That there was a warranty, or a representation, either express or implied, in the terms of the contract;

"Number Two. That the warranty, or representation, concerned a material fact;

"Number Three. That the Plaintiff relied on that warranty, or representation, and was induced thereby to bid on the contract;

"Number Four. That his reliance was reasonable under the circumstances; and, finally,

"Number Five. That the representation was not true and as a result the Plaintiff suffered damages as a consequence of that breach.

"In connection with the elements that I have just referred to which the Plaintiff must prove in order to establish breach of warranty, I should say that a breach of warranty gives rise to a cause of action for damages only if the warranty was of a kind and nature the natural tendency of which would be to induce the party to whom it was made to enter into the contract which he would not otherwise have entered into; and, in order to recover, the Plaintiff must prove by a fair preponderance of the evidence that the warranty was, in fact, an inducing cause of its entering into the contract and that it would not have entered into the contract at the price bid by it if it had known the true facts.

"A person is not justified in relying upon a warranty or claim that he relied upon it if the actual facts were known to him at the time that he entered into the contract or if the conditions were such that he should have known what the true facts were if he had acted with reasonable caution and care.

\* \* \* \* \*

"\* \* \* It is for you, the Jury, to determine whether a reasonably pru-

■ The remaining issue to be considered is the allowance of prejudgment interest. In allowing this interest, the trial court relied on Minn. St. 161.332, which provides as follows:

"When any contract for the construction, improvement, or repair of any trunk highway has been entered into by the commissioner of highways of the state of Minnesota, and the work provided for in the contract has been in all things completed to the satisfaction of the commissioner or his agent except for the release of sureties, in accordance with the contract, by the person with whom the commissioner has contracted, herein termed the contractor, unless final estimate for the work is made within 90 days after the contractor has so completed the work, he shall be entitled to receive interest at the rate of four percent per annum from the date of the expiration of that 90 day period upon all

dent. contractor would have relied on the representations made in the contract, the plans, the specifications, and the proposal.

"It is also for you to determine what a reasonably prudent contractor would have learned from an examination of all of the sheets of the complete plans. You should also take into consideration whether or not the material relating to balance areas, haul station data, and quantities of materials was the kind, or type, of data which a contractor could reasonably expect to have been accurately prepared by the Highway Department and whether this data—that is, the balance area data, the haul station data, and the quantity data—was the kind, or type, that the contractor would reasonably be expected to re-figure or re-compute on his own in arriving at this estimated costs of construction or whether it was the kind, or type, of data that the contractor could reasonably rely upon.

"Of course, it should be borne in mind that the only real purpose of the State in providing quantity estimates and other data in the proposal is to provide a basis for bidding.

"Since the time available for preparation of Plaintiff's bid was relatively short, it may fairly be said that the State intended that this data be used by the contractors, including Plaintiff, in making their bids, and whether the contractor relied on this data may be inferred from all the facts and circumstances as you find them to be from the evidence."

amounts finally determined to be due him which were not paid prior to the expiration of that period, to be paid in the same manner as, and at the time of, the final payment under the contract. The 90 day requirement, and the interest provisions provided for herein, shall not apply if delay is caused by the contractor; nor shall the 90 day requirement apply to contracts over one million dollars if the contract provides specifically for a different period of time in which to make such final estimate."

The state contends that the statute contemplates the payment of interest only upon the amount that the state admits it owes, and that it is designed as an incentive for the state to finish its final vouchers and to pay over to contractors the monies admittedly owed. Plaintiff contends that the statute is merely a legislative enactment of the principles established in our decision in Otto B. Ashbach & Sons, Inc. v. State, 247 Minn. 573, 78 N. W. 2d 446 (1956). In that case, we allowed prejudgment interest on the grounds that the state, having waived immunity and submitted itself to civil litigation, was in the same position as other litigants and like them rendered itself liable for interest on any debts that the court may determine are owing. We cannot interpret the statute as narrowly as the state contends. It is not their decision to admit liability for an obligation which imposes the statutory interest obligation. Neither can we construe the statute to say that any subsequent litigation automatically imposes the interest obligation of the statute to the benefit of a successful litigant. We hold that the statutory interest obligations apply only where the damages were readily ascertainable by computation or reference to generally recognized standards such as market value and not where the amount of damages depended upon contingencies or upon jury discretion. Potter v. Hartzell Propeller, Inc. 291 Minn. 513, 189 N. W. 2d 499 (1971).

In submitting its case to the jury, plaintiff suggested three different methods of calculation of damages. First, it itemized each claim of breach and totaled the results. Second, it suggested that the contractor's daily costs be multiplied by the time over-

run. Finally, it suggested that the jury reach a damage figure by subtracting the amount plaintiff was paid from the total expenses. Applying these three methods, plaintiff reached results ranging from $431,898.56 to $624,148. The jury returned a verdict in the amount of $331,998.60.

Examination of the evidence in this case discloses that there were many disputes as to the state's liability on items having substantial questions of fact, such as whether certain excavations were from recut or plan, whether some overruns were rock or common, and other material disputes. Applying the standards we have approved herein, it would be unreasonable to hold that these unliquidated claims involved damages readily ascertainable by computation or reference to generally recognized standards. However, the state concedes that plaintiff is entitled to interest upon the sum of $5,698.62 under the statute from and after February 14, 1972, the date the final voucher was tendered, this amount being uncontested.

We affirm the trial court on the issue of proper submission of breach of warranty but reverse and remand with instructions to modify the judgment to allow prejudgment interest only on the sum of $5,698.62.

Neither party shall be allowed costs or disbursements.

Affirmed in part; reversed and remanded in part.