Kenneth A. HENDRICKS, individually; Dealers Supply Holding Company, Inc., and Kenneth A. Hendricks, assignee; Kenneth A. Hendricks, for the use and benefit of Dealers Supply Holding Company, Inc.; Dealers Supply Holding Company, Inc., Appellants,

v.

James H. CALLAHAN, Appellee.

No. 91–3267.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1992.

Decided July 27, 1992.

Rehearing Denied Sept. 2, 1992.

from its order for judgment on the merits of another warranty claim. We affirm.

## I.

This case involves a purchase agreement for the sale of stock. In 1985, Dealers Supply, a company whose sole stockholder is Hendricks, agreed to buy the stock of Callahan Steel Supply, Inc. ("Callahan Steel") from appellee, James H. Callahan ("Callahan"), and the Callahan Steel Supply Profit Sharing Trust. Under this agreement (the "Purchase Agreement"), Callahan made various warranties and promises, three of which are the focus of this appeal.

First, Callahan warranted that Callahan Steel's financial statements "fairly reflect the Corporation's assets, liabilities, equity and results of operations as of March 31, 1985" (the "Financial Statement Warranty"). Second, Callahan warranted that Callahan Steel had "good and marketable title to all properties owned by it, as reflected on the balance sheet, free and clear of all title defects, obligations, liabilities, liens, encumbrances, charges and claims of any kind, except for: ... liens and encumbrances and other matters reflected in the Balance Sheet" (the "Property Warranty"). Third, Callahan promised to "hold the company [Dealers Supply] harmless in and for all liabilities that may inure to the Corporation [Callahan Steel] related to the ABERDEEN DEVELOPMENT CORPORATION, Plaintiff, vs. CALLAHAN STEEL SUPPLY, INC. ET AL, lawsuit now pending in Aberdeen, South Dakota," and promised to "bear all expenses of said litigation" (the "Litigation Indemnity Agreement").

Callahan Steel conducted its business in two locations: Newport, Minnesota and Aberdeen, South Dakota. In Aberdeen, Callahan Steel leased a warehouse from the Aberdeen Development Corp. ("ADC"). In fact, Note 12 of the Financial Statement stated: "The Company [Callahan Steel] leases warehouse and equipment in Aberdeen, South Dakota under an agreement which is cancellable by the Company at any time." When the Purchase Agreement was executed, Callahan Steel was engaged

Karl W. Leo, Huntsville, Ala., argued (Marla Rakerd Tipping, Minneapolis, Minn., appeared on the brief), for appellants.

Steven E. Rau, St. Paul, Minn., argued (Mark R. Gleeman, appeared on the brief), for appellee.

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Appellants, Kenneth A. Hendricks ("Hendricks") and Dealers Supply Holding Company, Inc. ("Dealers Supply"), appeal from the district court's [1] order granting summary judgment on one warranty claim and

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

in litigation with ADC, as disclosed in the Litigation Indemnity Agreement, and a mechanic's lien had been placed on the property. It is undisputed that Dealers Supply and Hendricks knew of this lien on the Aberdeen leasehold, even though the lien is not specifically mentioned in the Litigation Indemnity Agreement or the Financial Statement.

In 1987, Hendricks decided to sell Dealers Supply. Certain assets, including the Aberdeen leasehold, were to be sold to A.P.I. Supply Company ("API"). Because the property was still encumbered by the mechanic's lien, and the related litigation was still pending, Dealers Supply was unable to furnish API with clear title. Although Dealers Supply offered to assign the benefit of the Litigation Indemnity Agreement to API, and Callahan was willing to make good on the Litigation Indemnity Agreement, API would not purchase the Aberdeen property without clear title. Callahan refused to settle the litigation or to escrow money to provide clear title, API did not purchase the leasehold, and Dealers Supply did not realize the desired price for the Aberdeen leasehold.

Although Dealers Supply did not sell the Aberdeen leasehold to API, it did sublet the warehouse to API for a time. API eventually left Aberdeen in 1989 and Dealers Supply was unable to relet the property. Because Dealers Supply was no longer actively conducting business, it sought to cancel its Aberdeen lease with ADC. Although Note 12 of the Financial Statement indicated that the Aberdeen lease was "cancellable at any time," the actual lease provisions did not allow Dealers Supply to terminate the lease without liability. Instead, Dealers Supply forfeited a substantial amount of personal property to the lessor in order to cancel and terminate the Aberdeen lease.

Appellants (collectively referred to as "Hendricks") brought this suit against Callahan alleging four counts. The district court ruled in Callahan's favor on all counts, and on appeal Hendricks challenges the district court's rulings on two of those counts. In Count II, Hendricks asserted

Callahan breached the Property Warranty and the Litigation Indemnity Agreement by failing to provide clear title to the Aberdeen leasehold. The district court granted Callahan's motion for summary judgment on Count II. In Count III, Hendricks alleged Callahan breached the Financial Statement Warranty because Note 12 of the Financial Statement indicated that the Aberdeen lease was cancellable when, in fact, the lease was not. The district court refused to grant summary judgment on this issue, but after a bench trial ruled that Hendricks had failed to prove his breach of warranty claim.

## II.

Hendricks argues the district court erred in finding that Callahan did not breach either the Property Warranty or the Financial Statement Warranty. Essential to the court's rulings is its determination that Minnesota law requires a party alleging a breach of express warranty to have relied on that warranty when making the contract. Before addressing the merits of each warranty claim, we must decide whether Minnesota law requires a purchaser to rely on the warranty to succeed in a breach of warranty claim.

### A. The Requirement of Reliance

As the district court correctly noted, "[w]hether tort-like reliance is a necessary element in a claim for a breach of express warranty is a difficult question, at best." The court determined, however, that "the law of Minnesota appears to require some form of reliance" on the part of the buyer as an element for a breach of express warranty claim. In this diversity case, the elements of a breach of warranty claim are a question of Minnesota law. We review a district court's determination of state law de novo. *Salve Regina College v. Russell,* — U.S. —, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991).

In concluding that reliance is required, the district court cited only one case, *Midland Loan Finance Co. v. Masden,* 217 Minn. 267, 14 N.W.2d 475, 481 (1944) ("To enable a party relying upon a

breach of express or implied warranty to recover, it must be clear and definite that there was reliance upon the warranties involved."). Hendricks argues that *Midland* no longer reflects the current law in Minnesota and urges us to hold that the buyer's reliance is irrelevant in a breach of warranty claim. We decline to do so.

Hendricks gives several reasons why we should not follow *Midland*. First, he argues that because *Midland* was decided prior to Minnesota's adoption of the Uniform Commercial Code ("UCC"), its discussion of express warranties is no longer valid. In 1966, the UCC became effective in Minnesota. It defines an express warranty as an affirmation "which relates to the goods and becomes the basis of the bargain." Minn.Stat.Ann. § 336.2–313 (1966). This provision replaced § 512.12 of the statutes and omitted the requirement that a buyer "rely" on an express warranty.[2] Hendricks contends the Minnesota legislature has omitted the requirement of reliance in this context and, in effect, overruled *Midland*.

We need not discuss in detail the subtle differences between "reliance" and "basis of the bargain." The transaction in this case (as well as the transaction in *Midland*[3]) was not a "transaction[ ] in goods" and therefore is not covered by the provisions of the UCC. *See* Minn.Stat.Ann. § 336.2–102 (1966). Even if we apply the UCC warranty provisions by analogy, we are not convinced Minnesota has completely abandoned the requirement of reliance. *Compare* Minnesota Code Comment to § 336.2–313, at 280 ("This difference in terminology [between "reliance" and "basis of the bargain"] probably brings about no great change in the results of cases.")

*with* Uniform Commercial Code Comment to § 336.2–313, at 282 ("[N]o particular reliance on such statements [*i.e.*, express warranties] need be shown to weave them into the fabric of the agreement."). *See also Wurm v. John Deere Leasing Co.*, 405 N.W.2d 484, 489 (Minn.Ct.App.1987) (applying § 336.2–313, the court stated "[a]ppellant admitted that he *did not rely* on the representations in purchasing [the tractor] ..., therefore, the trial court properly granted partial summary judgment on his claims of misrepresentation and *breach of an express warranty.*" (Emphasis added)).

Hendricks also argues that *Midland* has been overruled *sub silentio* by recent Minnesota Supreme Court decisions. He relies on *Peterson v. Bendix Home Systems*, 318 N.W.2d 50 (Minn.1982), for the proposition that the Minnesota Supreme Court no longer requires reliance as an element of a breach of warranty claim. In *Peterson*, the court stated, "To establish a warranty claim the plaintiff must basically prove: [1] the existence of a warranty, [2] a breach, and [3] a causal link between the breach and the alleged harm." 318 N.W.2d at 52–53. That these are the elements of a breach of warranty claim under the UCC in Minnesota is beyond dispute. *See Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 730 (Minn.1990); *Craft Tool & Die Co. v. Payne*, 385 N.W.2d 24, 26 (Minn.Ct.App. 1986); *Imdieke v. Blenda–Life, Inc.*, 363 N.W.2d 121, 124 (Minn.Ct.App.1985). Hendricks argues that because the requirement of reliance is not an enumerated element in these breach of warranty cases, Minnesota no longer requires reliance.

We are unpersuaded by this argument for two reasons. One, all the cases which

---

**2.** The Minnesota Code Comment to § 336.2–313 states, "There is one minor difference in terminology [between the previous statute, § 521.12, and the UCC provision, § 336.2–313]. The affirmation or promise does not have to have a natural tendency to induce the buyer to purchase the goods, and the buyer does not have to rely upon it."

**3.** Appellants claim the transaction in *Midland* was a sale of goods. Although the underlying transaction in *Midland* was the sale of a car, the dispute in that case was over the assignment of

the usurious conditional sales contract from the defendant dealer to the plaintiff finance company. In *Midland,* the car dealer expressly warranted to the finance company that the conditional sales contract was bona fide and enforceable. In fact, the conditional sales contract was usurious and unenforceable, and the plaintiff sued the defendant for breach of warranty. The court held that the plaintiff did not rely on the defendant's express warranty because the plaintiff had calculated the usurious finance charges.

recite the three elements of a breach of warranty claim dealt with transactions in goods which are governed by § 336.2-313. Again, neither *Midland* nor the present case involved transactions in goods. Two, although appellants correctly note that none of the elements in *Peterson* requires "reliance," they ignore the fact that the first element—the existence of an express warranty—requires the warranty to be the "basis of the bargain." In each case which recites the three *Peterson* elements, the court found no dispute as to the first element—that an express warranty existed—and therefore never addressed the issue of whether the warranty was the basis of the bargain. *See Schweich*, 463 N.W.2d at 731; *Peterson*, 318 N.W.2d at 52; *Craft Tool & Die*, 385 N.W.2d at 26; *Imdieke*, 363 N.W.2d at 124. In a case decided before *Peterson*, however, the Minnesota Supreme Court briefly discussed whether an express warranty existed and stated that "an express warranty arises when a seller makes an affirmation of fact ... which becomes part of the 'basis of the bargain' between the parties." *Easton Farmers Elevator Co. v. Chromalloy Am.*, 310 Minn. 568, 246 N.W.2d 705, 710 (1976). The court went on to find that the "alleged statements, if credited by the jury, clearly constituted express warranties which were central to the negotiated bargain between the parties." *Id.*

Finally, Hendricks urges us to hold that Minnesota would adopt the "modern view" which provides that the buyer's reliance on the warranty is "wholly irrelevant." This is the position adopted by the New York Court of Appeals in *CBS, Inc. v. Ziff-Davis Publishing Co.*, 75 N.Y.2d 496, 553 N.E.2d 997, 1000–01, 554 N.Y.S.2d 449, 452–53 (1990) ("This view of 'reliance'—*i.e.*, as requiring no more than reliance on the express warranty as being part of the bargain between the parties—reflects the prevailing perception of an action for breach of express warranty as one that is no longer grounded in tort, but essentially in contract."). We are not persuaded Minnesota would adopt this position; rather we are convinced it would require some sort of reliance.

In *Alley Construction Co. v. State*, 300 Minn. 346, 219 N.W.2d 922 (1974), the Minnesota Supreme Court as much as held that reliance on the warranty was required in a breach of warranty case. In that case, the state requested bids be submitted for the construction of a highway. The plans and specifications designated certain portions of the highway as "balance areas." In a balance area, the amount of "fill" material required was to be approximately equal to the amount of material to be "cut." After the plaintiff was awarded the contract and completed the project, it sued the state alleging a breach of warranty because the "balance areas" were not at all balanced. In fact, none of the "balance areas" was balanced and the plaintiff experienced significant increases in the cost of hauling material. The plaintiff was successful at trial and "[o]n appeal, the state contend[ed] that it was improper to submit the issue of breach of warranty since there [was] no evidence that plaintiff relied upon the contract and specifications in submitting its bid." *Id.* 219 N.W.2d at 924. The supreme court determined that when a party submits a bid in this situation, "an inference of reliance [on the plans and specifications] properly arises." *Id.* The trial court instructed the jury that for a breach of warranty claim, the plaintiff had the burden to establish five elements, one of which was "[t]hat the plaintiff relied on that warranty, or representation, and was induced thereby to bid on the contract." *Id.* at 925 n. 1. The supreme court held that the trial court's instruction to the jury "was in accordance with the applicable law." *Id.* at 925.

In sum, because this transaction is not governed by the UCC, because *Peterson* and its progeny are UCC cases, because the Minnesota Supreme Court has affirmed the use of jury instructions which require reliance in a related context, and because the Minnesota Supreme Court has not expressly overruled *Midland*, we are not persuaded that *Midland* no longer reflects the current law in Minnesota. Having determined that appellants must show some form of reliance on the warranty to suc-

ceed,[4] we turn to the merits of the two warranty claims in issue.

### B. The Property Warranty Claim

■ Hendricks claims Callahan breached the Property Warranty by failing to provide clear title to the Aberdeen leasehold. In conjunction with this warranty claim, he contends Callahan breached the Litigation Indemnity Agreement by failing to indemnify Dealers Supply from any effect of the lien litigation. The district court granted Callahan's motion for summary judgment on this claim, and we review that decision using the same standard as the district court. We must decide whether there is no genuine issue of material fact and the non-moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We view the evidence in the light most favorable to the nonmoving party and give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Moore v. Webster,* 932 F.2d 1229, 1230–31 (8th Cir.1991).

The district court held that "[i]n light of the full disclosure of the litigation in the Purchase Agreement and Cunningham's[5] full knowledge of the lien prior to closing, Callahan's failure to disclose the lien in the Financial Statements did not breach the Property Warranty in the Purchase Agreement." On appeal, Hendricks concedes that he was aware of the lien and that he did not rely on its non-existence in purchasing the stock of Callahan Steel. Rather, Hendricks claims he relied on Callahan's promises to provide clear title and to indemnify Hendricks from any losses that may result from the existence of the lien.

Essentially, Hendricks argues that Callahan breached the Property Warranty and Litigation Indemnity Agreement by refusing to provide clear title to the Aberdeen leasehold when Hendricks demanded it. Those provisions of the Purchase Agreement, however, do not impose such an obligation upon Callahan. In the Property Warranty, Callahan promised to provide clear title to all its properties, "except for ... liens and encumbrances and other matters reflected in the Balance Sheet." Although the lien on the Aberdeen leasehold was not listed in the balance sheet, Hendricks concedes he was aware of the lien and therefore the lien falls within this exception to the Property Warranty. In the Litigation Indemnity Agreement, Callahan agreed to "hold [Hendricks] harmless in and for all liabilities that may inure to [Callahan Steel] related to the [Aberdeen litigation]." Hendricks argues that the inability to sell the Aberdeen leasehold to API (or more specifically, the fact that API refused to purchase the leasehold subject to the lien) is a "liability ... related to the [Aberdeen litigation]." We disagree.

When Hendricks purchased the stock of Callahan Steel, he knew there was a lien on the Aberdeen leasehold and agreed to allow Callahan to proceed with the litigation concerning that lien. Callahan promised to hold Hendricks harmless for any liabilities related to the litigation. The Property Warranty did not give Hendricks the right to demand clear title to the Aberdeen leasehold at any time. Hendricks claims that such a construction of the Purchase Agreement is unreasonable because Hendricks must be able to sell the assets he purchased. Under our construction, however, he was free to sell exactly what he purchased—the Aberdeen leasehold, subject to the lien and with Callahan's promise to hold him harmless for any liabilities resulting from the litigation. The fact that API was unwilling to purchase what Hendricks had purchased does not mean that Callahan breached the Property Warranty.

Hendricks also argues that under *Financial Timing Publications v. Compugraph-*

---

4. Appellants also assert that even under *Midland,* reliance is not required in all cases. Appellants incorrectly argue that *Midland* stands for the proposition that "a buyer cannot recover under a general warranty of quality for defects 'in the absence of express agreement.'" Appellants' Brief at 16 (quoting *Midland,* 14 N.W.2d at 481). Appellants try to distinguish *Midland* on the theory that the present case involves express warranties while *Midland* did not. This argument is without merit because *Midland* involved an express warranty.

5. Cunningham was employed by Hendricks to assist in the acquisition of new businesses.

*ic Corp.,* 893 F.2d 936 (8th Cir.1990), an issue of material fact exists concerning reliance and summary judgment is inappropriate. *Financial Timing,* a fraud case under Minnesota law, does not support Hendricks' position. In *Financial Timing,* we held that summary judgment was inappropriate because an issue of fact remained concerning whether the purchaser had relied on various statements by the seller. 893 F.2d at 942–44. Here, however, we hold that Callahan did not promise to provide clear title to the Aberdeen leasehold on demand, and therefore Callahan did not breach any warranty. We affirm the district court's grant of summary judgment on this claim.

### C. The Financial Statement Warranty Claim

■ Hendricks also claims Callahan breached the Financial Statement Warranty because Note 12 of the Financial Statement indicated that the Aberdeen lease was cancellable when, in fact, the lease was not. After a bench trial, the court ruled that Hendricks failed to prove this breach of warranty claim. In his brief, Hendricks concedes that "[a]t trial, the district court determined that there was no reliance on the warranty made by defendant [Callahan] concerning cancellability of the Aberdeen lease. Therefore, in the event this Court finds the reliance is a requirement, the district court determination as to Count III must be affirmed." Because we find that some form of reliance is required under Minnesota law, we affirm the district court's ruling on the Financial Statement Warranty claim.

### III.

We affirm the district court's entry of summary judgment on the Property Warranty claim and affirm the entry of judgment on the merits of the Financial Statement Warranty claim.