**E. H. LAND, Jr. and Peggy F. Land, Plaintiffs-Appellees,**

v.

**ROPER CORPORATION, Defendant-Appellant.**

**No. 74–1700.**

United States Court of Appeals, Tenth Circuit.

Argued Nov. 14, 1975.

Decided Jan. 19, 1976.

James W. Sargent, of Sargent, Klenda & Glickman, Wichita, Kan. (L. D. Klenda, of Sargent, Klenda & Glickman, Wichita, Kan., on the brief), for plaintiffs-appellees.

Louis A. Lehr, Jr., of Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill. (Ronald M. Gott, of Gott, Hope, Gott & Young, P. C., Wichita, Kan., on the brief), for defendant-appellant.

Before HOLLOWAY, McWILLIAMS and DOYLE, Circuit Judges.

DOYLE, Circuit Judge.

The appellant corporation appeals from a judgment which was entered by the United States District Court for the District of Kansas following a jury verdict in favor of the appellees. The jurisdiction of the court is based on diversity of citizenship.

The action grew out of a merger of Land Manufacturing, Inc. with Roper Corporation, Inc. Land was a relatively small local manufacturing company which was virtually wholly-owned by the appellees.* Roper was a large company (its stock was listed on the New York Exchange), which sought the merger in order to diversify its business activity. The chief products of Land were helmets—motorcycle, snowmobile and construction.

The negotiations started in December 1972, when the Roper executives and consultants started discussions with E. H. Land and made inquiries about the business capacities of Land Manufacturing, Inc. All of this culminated in a merger which took place on May 2, 1973. As a result of the merger E. H. Land, majority shareholder of the merged corporation, received 149,408 shares of Roper common stock. One Oakley Farris, the minority shareholder of the Land Company received 10,592 shares of stock. The stock received had a value determined as of February 1973 of approximately $4,500,000, but by the date of the closing the price of the Roper stock on the market declined to approximately $3,800,000. In addition, E. H. Land was given an employment contract to manage the newly acquired corporation. In the course of the litigation, however, he was terminated.

In the course of negotiations E. H. Land furnished an unaudited interim financial statement of the Land Company covering

---

\* A segment of the shares were owned by an associate, one Oakley Farris. These were also traded to Roper.

the period from October 31, 1972 to March 31, 1973.

The warranties which Roper contends were breached were basically two.

First, the representation by Land that the financial statement mentioned above had been prepared in accordance with generally accepted accounting principles applied on a consistent basis throughout the period involved and presented fairly the financial position of the Land Company as of the dates thereof and the results of operations and changes in the financial positions for the period indicated.

Secondly, it was represented that there had been no adverse changes in the business, property or general financial condition of the Land Company as reflected by said financial statements (since October 31, 1972, the ending date of the last audited fiscal year).

Roper also relies on the statement furnished by Land on the occasion of the closing, the same being "Certificate of President" reaffirming that all representations in the merger agreement were true. The bone of contention with respect to the alleged misleading figures in the interim statement of the Land Company was whether a profit had been earned as of the close of the five-months period in question. Roper maintained that there was no profit and that which appeared on the books was based upon adjustments which were unsupported. However, there was evidence in the record which, if believed, showed that there had been a profit in an amount not greatly different from that represented, which was dependent upon adjustments at the end of the period reflecting inventory on hand.

Approximately seven months after the merger Roper informed Land that the business was not in the condition that Land had represented and that it wished to rescind the merger. Thereupon, the Lands filed a suit for declaratory judgment, the object of which was to uphold the merger and prevent a rescission. Roper, however, counterclaimed seeking either rescission or damages.[1]

Land requested a jury trial which Roper claims was untimely. Nevertheless, the court allowed the case to be submitted to the jury. The trial court instructed the jury that if Roper did not rely on the representations of Land or if the representations contained plain or obvious defects, Roper could not justifiably rely on them. Roper maintains that this instruction was erroneous. Roper's position was and is that if warranties were breached or violated it made no difference whether they were relied on or not.

Another point which is argued by appellant is that the evidence as to the breach of warranties was undisputed and hence the issue of the breach should not have been submitted to the jury.

A further issue which is raised by Roper is that it was error for the trial court to even have a jury because of the fact that the suit, according to the argument, was a rescission action which is equitable. Roper also contends that the demand for a jury was out of time. At the time of its determination that the jury would be appropriate, the court was not certain as to whether a jury would function in the case. The court considered, however, that it was good practice to have the jury hear it and to make the determination later as to whether or not they would function. As it turned out, the jury was allowed to pass on the issues in the case.

I.

WHETHER IN KANSAS RELIANCE IS A NECESSARY ELEMENT IN AN ACTION FOR A BREACH OF EXPRESSED WARRANTY

Roper's primary contention is that to recover it need only show that Land failed to fulfill the warranties. The trial court ruled that mere proof that the warranty was not complied with does not suffice; that it must also appear that there had been reliance on

---

1. The court ruled that Roper had to maintain the burden of proof.

the warranty. The governing law is that of Kansas, and our inquiry as to need for reliance must then be keyed to that law.

■ The established approach to this quest is that the district judge's view of the law within his district is given great weight particularly where, as here, the law of the state is not entirely settled. We have said: "The views of a federal district judge, who is a resident of the state where the controversy arose in a case involving interpretations of the law of that state, carries extraordinary persuasive force on appeal where there are no state decisions on point or none which provide a clear precedent." *Stevens v. Barnard*, 512 F.2d 876, 880 (10th Cir. 1975). *See also United States v. Wyoming National Bank of Casper*, 505 F.2d 1064 (10th Cir. 1974); *Hardy Salt Co. v. Southern Pacific Transp. Co.*, 501 F.2d 1156 (10th Cir. 1974). Similar cases have gone further in upholding the trial judge's view of what the state law is and have said that generally the court's interpretation will not be overturned unless clearly erroneous. *See Wells v. Colorado College*, 478 F.2d 158 (10th Cir. 1973); *Binkley v. Manufacturers Life Ins. Co.*, 471 F.2d 889 (10th Cir.), *cert. denied*, 414 U.S. 877, 94 S.Ct. 130, 38 L.Ed.2d 122 (1973).

The record before us discloses that the trial judge very carefully sought to probe the issue under Kansas law. The matter was fully argued by the lawyers in their respective trial briefs and in memos which accompanied their proposals for instructions. After the arguments the court concluded and so instructed the jury that reliance was an essential element and that if Roper had not relied on the warranties given, then the jury was to return a verdict in favor of Land.

Although the Kansas cases are not positive or absolute on the question, there is dicta in several Kansas cases to the effect that reliance is necessary. Such a state-ment is found in *Topeka Mill & Elevator Co. v. Triplett*, 168 Kan. 428, 213 P.2d 964 (1950). The court there said: "We think appellants' evidence failed to establish an express warranty and that such a warranty, if made, was relied on." But in the case in which this statement was made the important issue was whether an oral statement before the court was a warranty.

■ Generally reliance by the buyer is necessary in an action for breach of the seller's warranty. *See* 1 Williston on Sales Sec. 206 (Rev. ed. 1948).[2] To the same effect is *Shippen v. Bowen*, 122 U.S. 575, 78 S.Ct. 1283, 30 L.Ed. 1172 (1887) and also Prosser on Torts Sec. 105 at 693 (1971 ed.).

■ The Sales Act which was the law in Kansas prior to the Uniform Commercial Code prescribed reliance as a necessary element. *See* 2 Williston on Sales Sec. 15–5 (Squillante and Fonseca ed. 1974). The warranty is not actionable in its absence. *Cf.* UCC 2–313, Comment 3, which has been held to express an intent that the reliance requirement be continued. *See Speed Fastners, Inc. v. Newsom*, 382 F.2d 395 (10th Cir. 1967); White & Summers, Uniform Commercial Code, at 277.

It is reasonable to infer that the reliance requirement applicable to sales of goods would be extended to the transfer or sale of securities.[3]

Another approach to our inquiry whether Kansas law probably would hold reliance necessary in an express warranty case arises from the analogous Kansas rule recognizing a cause of action for innocent misrepresentation made without negligence or scienter *if* it was made to induce a business transaction and *if* it was relied on by the plaintiff to his detriment. *See Roome v. Sonora Petroleum Co.*, 111 Kan. 633, 208 P. 255 (1922) (sale of land and oil well casing); *Becker v. McKinnie*, 106 Kan. 426, 186 P. 496 (1920) (sale of water rights).

---

**2.** The author states:

Any affirmations of fact or promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, *and if the buyer purchases the goods relying thereon.* (Emphasis supplied.)

**3.** Note, Under the Spreading Analogy of Article 2 of the UCC, 39 Fordham L.Rev. 447 (1971).

The breach of express warranty is similar to the action for non-negligent or non-intentional misrepresentation since the warranty action emerged from the law of deceit. *See Prosser on Torts Sec. 105 at 686.* Also, Williston recommended that the innocent misrepresentation action be employed to remedy the breach of warranty. *See* Williston, Liability for Honest Misrepresentation, 24 Harv.L.Rev. 415 (1911).

We are mindful that Williston has also said in 1 Williston on Sales Sec. 206 (Rev. ed. 1948) that reliance is ordinarily not much of an issue in a breach of warranty case. In other words, the parties frequently take for granted that there was reliance, but here the situation is quite different. In this case Roper made reliance its chief contention. Land took the opposite position and offered evidence that Roper had made an independent evaluation of the Land Company and did not rely on Land's representations at all. Land showed that Roper personnel and consultants had free access to the Land Company financial records and that Roper was fully aware of a drop-off in sales shortly before the merger. There was also evidence that Roper's directors relied entirely on projections by Roper employees.

In sum, we are of the opinion that the trial court was correct in its ruling that reliance was an essential element and in effect holding that there was substantial evidence to establish that Roper made an independent investigation.

## II.

### WHETHER THERE WAS A FACT ISSUE AS TO BREACH OF WARRANTY

■ Roper contends that the great dearth of evidence on this precluded jury consideration of it as a factual issue; that it thereby was a matter of law. This fails to take into account, however, that Land presented considerable expert testimony from which a jury could have concluded that there had not been "any material ad-

verse change in the property or financial condition of Land Company in the months prior to the merger."

Experts of Land and Roper disagreed to a considerable extent (as much as $225,000) as to what should have been the fair profit figure reported by Land in its unaudited interim five-month financial statement. The experts demonstrated how selection of certain inventory figures and other adjusting entries could result in a significant profit becoming a significant loss. In the light of this we see no error in the submission of this question to the jury. The sole part of Land's representation which did not fulfill the warranty was that the financial statement was prepared in accordance "with generally accepted accounting principles."

■ It seems to us that even from the testimony of Land's accountant the statement furnishes no more than a trial balance. Surely this was obvious to Roper and as a representation not capable of causing damage. The crucial issue is whether the statement fairly presented Land's position. Whether orthodox accounting principles were observed seems of little moment.

## III.

THE QUESTION WHETHER IT WAS ERROR TO HAVE A JURY IN THE COURTROOM CONSIDERING THE CASE IN VIEW OF THE MAIN ISSUE BEING ALLEGEDLY EQUITABLE AND IN VIEW OF THE CONSIDERABLE DELAY IN MAKING THE DEMAND FOR THE JURY TRIAL

■ A declaratory judgment suit was filed December 26, 1973. The answer and counterclaim of Roper was filed January 6, 1974. On February 12, 1974, Roper filed an amended counterclaim seeking a declaratory judgment. On March 4, 1974, the Lands filed a reply to the amended counterclaim. In connection with that filing, the demand for a jury trial was made.[4] Based on the

---

4. The reply to the amended counterclaim should have been filed within 10 days after its service, i. e., no later than February 22, 1974. Fed.R.Civ.P. 15(a). A demand for trial by jury

fact that the answer to the amended counterclaim was not filed within 10 days in accordance with the rule, Roper filed a motion to strike the jury demand. At the pretrial conference the judge acknowledged that the jury demand was untimely, but said that he would nevertheless empanel a jury and decide later whether he should use it.

■ During the trial the court expressed the view that the rescission issue was for the court and that breach of warranty was a jury question. The court submitted the case to the jury over Roper's objections, and Roper now contends that this has resulted in prejudice to it. One of its reasons is that the court did not rule that the jury should not consider the case fully until the evidence was all in. In view, however, of the fact that the original pleadings did not necessarily describe a jury trial we see no error in the Lands' not asking for one until the answer to the amended counterclaim was filed because at that point there was a demand for damages and, therefore, an issue triable to a jury. *See Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *Dairy Queen v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Johns Hopkins University v. Hutton*, 488 F.2d 912 (4th Cir. 1973), *cert. denied*, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974). As we view it, then, plaintiff had a right to assert the jury demand so long as the claim for damages of Roper was before the court and the lateness problem fades away since there was a new issue raised by the amended pleading. *See* Rule 38(b). *See also Williams v. Farmers and Merchants Insurance Company*, 457 F.2d 37 (8th Cir. 1972); also, 5 J. Moore, Federal Practice, par. 38.41; 2B Barron & Holtzoff, Federal Practice and Procedure, § 878.

of any issue triable of right by a jury shall be filed "not later than 10 days after the service of the last pleading directed to such issue", Fed.R. Civ.P. 38(b). March 4, 1974, thus, was the last day on which a demand for a jury trial could be timely filed.

■ On timeliness, the trial judge has a broad discretion. *See* Rule 39(b). We have held that in the absence of abuse of this discretion a judge's ruling in these circumstances is not to be disturbed. *United States Fidelity and Guaranty Company v. Lembke*, 328 F.2d 569 (10th Cir. 1964); *Hazelrigg v. American Fidelity & Casualty Company*, 241 F.2d 871 (10th Cir. 1957). *Cf. DeGioia v. United States Lines Company*, 304 F.2d 421 (2d Cir. 1962), a case which is very similar in fact structure to the case at bar.

■ We are unable to find any prejudice to Roper as a result of the actions taken by the court. True, Roper might have tried its case differently had it been to the jury from the outset, but it does not indicate how it would have differed. Roper knew that the jury was going to consider some of the issues at least if only in an advisory capacity and the trial judge is free to accept the jury's verdict when this is the state of things. Since, then, Roper knew from the beginning that some of its issues were being tried to the jury, we fail to see that it could have changed its position measurably had it been fully aware of the extent of the jury's participation, so we see no abuse of discretion.

## IV.

### WERE THE TRIAL COURT'S INSTRUCTIONS ERRONEOUS?

Emphasis is placed on the alleged errors of the court in its initial instructions regarding breach of warranty. In connection with the embattled financial statement, the court initially instructed that before the jury could find a breach of warranty it had to find a failure to conform to generally accepted accounting principles and a misrepresentation of the company's operations.[5] The warranty instruction was, it is true,

5. The text of this instruction is as follows:
    The time period becomes important to you, the time period at the end of October 31st, 1972, up until the merger, but the financial statement is the one we are talking about.
    Now under the law, there is a breach of the warranty and representation given to Roper

somewhat inconsistent with the language of the contract and the warranty. However, on the following day after deliberations had begun, the court gave a supplemental instruction designed to correct the inaccuracy. This said:

"Now under the law, there is a breach of warranty and representation given to Roper Corporation by E. H. Land, Jr. and which relates to Exhibit "N", the financial statement for the 5 month period ended March 31, 1973, if you find one of the following, or any one of the following:

"That Exhibit "N" was not prepared in accordance with generally accepted accounting principles, or,

"That Exhibit "N" did not present fairly the financial position of LMI as of March 31, 1973, and the results of operations covering the period ended March 31, 1973."

Where the court corrects an error with a supplemental instruction, is the prejudice eliminated? Generally it is. *See South-East Coal Company v. Consolidation Coal Company*, 434 F.2d 767 (6th Cir. 1970); *Smith v. Wire Rope Corporation of America, Inc.*, 383 F.2d 186 (8th Cir. 1967). True, the judge did not explain to the jury that he was correcting a mistake, but he did give this crucial instruction at a time when the jury was deliberating and thus it certainly must have carried an impact. Therefore, we are unable to agree that Roper was prejudiced. The charge taken as a whole was correct.

Nor do we think that an instruction on parol evidence was necessary.

\* \* \* \* \* \*

Corporation by E. H. Land, Jr. and which relates to Exhibit "N", the financial statement for the 5-month period ended March 31st, 1973, if you find the following:

The magic words are "If you find the following." Remember, you are the triers of the fact. So I need to get your thinking in terms of what you have got to do. So there is a breach of the warranty and the representation given to Roper Corporation by Land, and which relates to Exhibit "N", the financial statement they have been talking about for all this time, for the 5 months period

Finally, we have considered the alleged errors asserted in connection with the admission of exhibits. The error in Exhibit 17 was adequately corrected by the court. We considered also Roper's objections to the court's ruling allowing Land to testify as to matters which were not directly germane to the issues being tried. This we do not consider to have been an improper exercise of trial court discretion.

The judgment of the district court is affirmed.

ended March 31st, 1973, if you find that Exhibit "N" was not prepared in accordance with generally accepted accounting principles. Now you have heard the testimony about it. And you, remembering back to what I told you, the believability, probability, you are the sole judges of that testimony. This is expert testimony.

And, second, that Exhibit "N" did not present fairly the financial position of LMI as of March 31st, 1973, and the results of operations covering the period ended March 31st, 1973.