**PROFESSIONAL SERVICE
INDUSTRIES, INC.,**
Plaintiff,

v.

**W. David KIMBRELL and Janet
Kimbrell, Defendants.**

Civ. A. No. 90–1326–MLB.

United States District Court,
D. Kansas.

Oct. 27, 1993.

William R. Smith, Hershberger, Patterson, Jones & Roth, David E. Bengtson, Morrison & Hecker, Wichita, KS, Christopher L. Vescovo, John J. Thomason, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, TN, for plaintiff and third party defendant ADIA S.A.

Paul L. Thomas, Wichita, KS, John J. Jurcyk, Jr., McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, John D. Petersen, Polsinelli, White, Vardeman & Shalton, Overland Park, KS, Dennis J. Dobbels, David A. Welte, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for defendants.

Barbara K. Huff, Lawrence, KS, for objector Rick Potter.

Christopher L. Vescovo, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, TN, for third-party defendants Hall–Kimbrell Environmental Services, Inc., Professional Service Industries Holding, Inc., Harold (NMI) Ahlberg, Stanley S. Stanley, James Ahlberg and Mark Weiland.

### MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on Professional Service Industries, Inc.'s (PSI) motion to reconsider, pursuant to Fed.R.Civ.P. 59(e), or, in the alternative, to modify the court's orders (Docs. 510 and 511) granting summary judgment to Kimbrells on PSI's claims against them. 834 F.Supp. 1305. (Doc. 512)

*Standards for Motion for Reconsideration*

The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of due diligence. *Anderson v. United Auto Workers,* 738 F.Supp. 441, 442 (D.Kan.1990). "[R]evisiting the issues already addressed 'is not the purpose of a motion to reconsider,' and 'advanc[ing] new arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was briefed' is likewise inappropriate." *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.), *cert. denied* —— U.S. ——, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992).

PSI's motion, considered as a whole, does not meet these standards. Nevertheless, the court will address PSI's arguments.

### Discussion

*Nondisclosure vs. Misrepresentation*

■ PSI argues the court applied the wrong standard in finding PSI had failed to establish the element of reliance on its Rule 10b–5 claim, as well as its common law fraud claim. PSI claims that in a case involving nondisclosures, the burden of proof on the issue of reliance shifts to the defendant. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Kimbrells respond that this burden-shifting rule does not apply because this case involves mixed allegations of misrepresentations and nondisclosures. *Grubb v. Federal Deposit Ins. Corp.,* 868 F.2d 1151, 1163 (10th Cir.1989).

PSI's argument is premised on the belief that in its orders relating to the motions for summary judgments (Docs. 510 and 511), the court found that PSI's Rule 10b–5 and common law fraud claims were bottomed on nondisclosure rather than upon misrepresentation. This is not so. While the court summarized PSI's claims as being in the "failure to disclose" category (Doc. 510, pp. 4–6; Doc. 511, p. 4), the court ultimately determined

that the claims rested primarily on allegations of *misrepresentation* by David Kimbrell, and not upon nondisclosure. For example, while PSI alleged that Kimbrell failed to disclose accurate financial information about his company, the facts revealed that PSI hired its own accountant, Jerry Armstrong, to do due diligence in connection with the proposed sale and that Armstrong reported that Hall–Kimbrell's earnings estimates were overly optimistic and that its profit projections did not appear reasonable. Whether or not this constitutes a misrepresentation may be open to argument but certainly it is not a failure to disclose. In addition, it is uncontroverted that David Kimbrell gave Tom Powers, PSI's point man, information regarding a restatement of Hall–Kimbrell's income and sales figures which Powers found "almost unethical." It is a non sequitur for PSI to contend that Kimbrell failed to disclose financial information while, at the same time, admitting that it had ethical concerns about Hall–Kimbrell's financial information (Doc. 510, pp. 21–23).

The same is true for PSI's claims that Kimbrell failed to disclose various problems Hall–Kimbrell was having, or might have in the future, with the EPA. While it is true that David Kimbrell refused to disclose the Private Placement memorandum and conceivably certain other information relating to Hall–Kimbrell's problems with the EPA, it is equally true that PSI was generally (and in the context of the Maggie Brown situation, specifically) aware of Hall–Kimbrell's and other similarly-situated companies' disputes with the EPA. The fact, assuming it is a fact, that PSI "had no problems with the EPA" does not detract from the fact that PSI and Hall–Kimbrell were in similar businesses and that PSI was knowledgeable about the goings-on in the industry. In other words, the evidence is clear that PSI was not a potential purchaser who was ignorant of the nature of Hall–Kimbrell's business [1] and the fact that Hall–Kimbrell not only had to deal with the EPA but also that Hall–Kimbrell had problems, either present or potential, with the EPA. The evidence also is clear that PSI confronted David Kimbrell about the problems prior to the sale. What David Kimbrell did or did not tell PSI in response to its inquiries is disputed. But even PSI alleges that Kimbrell's responses were a combination of a failure to disclose and misrepresentations.[2] Thus, what initially may have been a failure to disclose became a misrepresentation based upon Kimbrell's responses to PSI's inquiries.

The court agrees with PSI that the burden of proof regarding reliance shifts to the defendant in a nondisclosure case. However, a party cannot shift the burden merely by a unilateral, untested declaration that its claims are based on nondisclosure rather than misrepresentation. Nor does the court's description of PSI's claims as nondisclosure mean that the court found them to be so. The court merely was pointing out PSI's characterization of its claims. It was not agreeing with the characterization. The court believes its ruling on this point is clear but in case it is not, the court finds PSI's claims to be primarily claims of misrepresentation, *not* of nondisclosure. This is, at best, a "mixed" case involving both misrepresentations and omissions. *In re Sahlen & Associates, Inc. Securities Litigation,* 773 F.Supp. 342, 354 (S.D.Fla.1991). Thus, there is no shift in the burden of proof. *Grubb, supra,* and the cases cited therein. A plaintiff in a "mixed" case must prove its reliance and that it was justifiable. *Holdsworth v. Strong,* 545 F.2d 687, 696 (10th Cir.1976).

### Reliance

Next, PSI urges the court to reconsider its finding that PSI failed to show that it justifiably relied upon David Kimbrell's

---

1. The facts in this case are far removed, for example, from those in *Affiliated Ute Citizens, supra,* which involved unsophisticated investors. There is no question that PSI, which initiated the idea of purchasing Hall–Kimbrell stock, was sophisticated, both in the acquisition of companies and in the asbestos analysis and removal industry.

2. "The court appears to have based its ruling on PSI's alleged knowledge of problems in Michigan which were *not disclosed* by Kimbrell before the Powers/Kimbrell telephone conversations and which were the subject of specific *misrepresentations* by Kimbrell when confronted by Powers." (Doc. 513, p. 7) (emphasis supplied).

alleged misrepresentations (Doc. 510, pp. 23–35; Doc. 511, pp. 14–16). PSI argues that the court misapplied the seven prong test outlined in *Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1516 (10th Cir.1983). Specifically, PSI complains that the court erred when it found PSI had direct knowledge of potential problems with the EPA by virtue of a conversation between Margaret Brown, PSI's asbestos coordinator, and Harry Angelos, an EPA official, prior to the sale. Brown relayed the substance of her conversation with Angelos to Mark Weiland and Tom Powers, PSI's chief counsel and executive vice-president, respectively. The court found that as between Angelos' knowledge of what action the EPA would take against Hall–Kimbrell and David Kimbrell's knowledge of what action the EPA would take against Hall–Kimbrell, Angelos was in a superior position to know the EPA's position and communicated this information to PSI. (Doc. 510, p. 30)

PSI notes that Brown did not reveal Angelos' identity and asks: "Was Powers expected to force Brown to reveal the name of her informant? What right had he to require that?" Apparently PSI is contending that because neither Weiland nor Powers asked Brown to reveal the name of her EPA source, PSI is now entitled to disavow the information it learned from Brown which was that PSI was going to become involved with a company which had not done things correctly

and which had incurred terrible liabilities which would affect PSI "very badly."

■ The court finds PSI's position incredulous. The management of a company has the right to ask its employees for information that pertains to the company's business.[3] If PSI believes otherwise, it is a very unusual company. The information Brown relayed to Weiland and Powers cast serious doubt on a transaction worth tens of millions of dollars. PSI does not contend that Brown was not in a position to know, or that she was not a person worthy of belief, or that the information she relayed was not important. On the contrary, PSI considered her information sufficiently important to cause Powers to question David Kimbrell about it. Nevertheless, PSI proceeded to rely upon David Kimbrell's assurances to the contrary. A purchaser with PSI's sophistication and knowledge of the asbestos industry cannot credibly contend that it is entitled to take a seller's word at face value when faced with the highly negative information PSI had in its possession prior to the sale. PSI's disregard of Brown's warnings, coupled with the other factors discussed in the court's previous opinion, render its reliance unjustified.

PSI next contends the court erroneously found the reliance element of common law fraud was indistinguishable from the reliance element of Rule 10b–5. The court cited *Basic, Inc. v. Levinson*, 485 U.S. 224, 243, 108

3. PSI takes offense with the court's statement in footnote 14 of its opinion characterizing its counsel's advice to Brown not to reveal Angelos' identity during her deposition as "wholly improper." The court stands by its previous characterization. The purpose of a deposition is to discover information relevant to the issues presented in the lawsuit. Kimbrells were entirely justified in asking for the identity of Brown's EPA informant. While a witness may, *if appropriate*, invoke a privilege and refuse to answer, the privilege must be specific and legally recognized. PSI has not identified any specific privilege which would allow Brown to refuse to reveal Angelos' identity. Rather, PSI has cited Rule 1.6 of the Model Rules of Professional Conduct (Kansas Supreme Court Rule 226) and Canon 4 of the Code of Professional Responsibility (Kansas Supreme Court Rule 225). These rules are facially inapplicable to the situation presented in this case. PSI's counsel was not being asked to reveal his client's confidential information. More important, there was no confidential information to protect. Angelos' identity was not information Brown had a legal right or privilege to hold in confidence. While Brown may have considered the information "confidential," a witness' disinclination to provide relevant information for personal reasons does not render the information privileged or otherwise nondiscoverable. A reasonably competent attorney would have known this (and probably did) and should have instructed Brown (his client's employee) to answer the question. PSI's attorney's actions appear to have been an attempt to frustrate Kimbrells' efforts to obtain very relevant information damaging to PSI's case.

As a result of PSI's attorney's dubious advice, Kimbrells were forced to file a motion seeking a court order to discover Angelos' identity. The record in this case is already voluminous, and the court is unimpressed with actions that necessitate the filing of unnecessary motions. Such motions consume valuable judicial time and resources, not to mention causing added expense to the parties.

S.Ct. 978, 989, 99 L.Ed.2d 194 (1988), as authority for this proposition. PSI contends that *Basic* is a "fraud on the market" case under Rule 10b–5 and the court's statement does not properly reflect the holding of *Basic.*

The court agrees that *Basic* differs from the case at bar in many significant respects. The court's citation to *Basic* was limited to its support of the proposition that the standard for measuring reliance in a common law fraud claim did not differ from a Rule 10b–5 claim. In any event, PSI offers no reason why the standard governing common law fraud should be different. Its argument is merely a rehash of why its reliance was purportedly justified. The court adheres to its prior holding that PSI's reliance was not justified.

### Express Warranty

PSI argues the court erred in granting judgment on its breach of express warranty claim. The court found its decision was controlled by *Land v. Roper Corp.,* 531 F.2d 445 (10th Cir.1976). In *Roper,* the court found that reliance was a required element of a claim for breach of express warranty under Kansas law. *Id.* at 449. PSI argues the Tenth Circuit's holding is in conflict with *Young & Cooper, Inc. v. Vestring,* 214 Kan. 311, 521 P.2d 281 (1974).

The court recognized the tension between *Land* and *Young & Cooper* in its previous opinion. However, the court is bound to follow the decisions of the Tenth Circuit and believes it has properly reconciled the holdings of *Land* and *Young & Cooper.* The court declines the invitation to ignore *Land.*

### Rule 54(b) Certification

■ PSI asks this court to direct entry of final judgment on its claims against Kimbrells under Fed.R.Civ.P. 54(b). Rule 54(b) certification is reserved for the "infrequent harsh case" and is intended to preserve the historic federal policy against piecemeal appeals. *Rudd Const. Equip. Co., Inc. v. Home Ins. Co.,* 711 F.2d 54, 56 (5th Cir.1983); *Little Earth v. United States Dept. of Housing & Urban Development,* 738 F.2d 310, 313 (8th Cir.1984); *see also McKibben v. Chubb,* 840 F.2d 1525, 1528 (10th Cir.1988) (court must balance policy of preventing piecemeal appeals against the hardship or injustice that might be inflicted on a litigant because of delay).

■ PSI offers no argument as to why the court should enter a Rule 54(b) certification. The court does not perceive any circumstances justifying certification. The issues raised by Kimbrells' counterclaims remain to be adjudicated. The court finds the proper course is to await final adjudication of all the issues rather than permitting piecemeal appeals.

### Interlocutory Appeal

Alternatively, PSI seeks to have this court certify this case for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). 28 U.S.C. § 1292(b) provides in pertinent part:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing such order.

■ In order to certify an issue for interlocutory appeal, the court must find: (1) that the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists with respect to that question of law; and (3) an immediate appeal would materially advance the ultimate termination of the case. *Steinle v. Boeing Co.,* 785 F.Supp. 1434, 1444 (D.Kan.1992).

■ PSI makes no effort to identify precisely what issue it wishes to have certified for interlocutory appeal. It merely requests the court to certify the issues raised in Doc. 510. PSI's failure to specify the issue alone would justify denying its motion. But assuming the issue is whether PSI can satisfy the reliance requirement of its Rule 10b–5 and common law fraud claims, the court finds that PSI cannot satisfy the three requirements outlined above. In *Fretz v. Keltner,* 109 F.R.D. 303 (1985), Judge Crow of this

court observed that the Judicial Conference Committee of the United States had stated that § 1292(b)

> should and will be used only in exceptional cases where a decision of the appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases . . . It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of or that mere question as to the correctness of the ruling would prompt the granting of this certificate.

*Id.* at 308 (Citation omitted).

The court shares Judge Crow's views on this issue and does not find any exceptional circumstances justifying an interlocutory appeal. While the court's finding of no reliance might be considered a controlling question of law, there is not a substantial ground for difference of opinion as to the underlying legal standards of either a Rule 10b–5 claim or a common law fraud claim. Of course, PSI disputes the court's application of the reliance requirement to the facts of this case, but this does not constitute a substantial ground for difference of opinion. *Cf. Steinle v. Boeing,* 785 F.Supp. at 1444 (district court certifies for interlocutory appeal the issue of whether the Civil Rights Act of 1991 is to be applied retroactively). Finally, the court does not believe that an immediate appeal would materially advance the ultimate termination of the litigation. If anything, an interlocutory appeal at this stage would delay the adjudication of the case, which has been on file well over three years. The possibility that the Tenth Circuit may reverse the court's rulings does not warrant a postponement of this case.

PSI's motion (Doc. 512) to reconsider the court's orders granting summary judgment to Kimbrells on PSI's claims against them is hereby denied. PSI's alternative motions for a certification of a final judgment pursuant to Fed.R.Civ.P. 54(b) or to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) are denied.

IT IS SO ORDERED.